USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/27/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PATRICK PILORGE,

                Plaintiff,

      -v-

MARIO PANZARELLA ET AL.,

                Defendants.
------------------------------------------------------------------------X

12 Civ. 6459 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

      Plaintiff Patrick Pilorge, a state prisoner proceeding *pro se*, brings this action pursuant to Title 42, United States Code, Section 1983, against seven Defendants, all current or former employees of the New York State Department of Correctional Services ("DOCS"), alleging that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments. Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is GRANTED, and the Amended Complaint is dismissed.

## BACKGROUND

      The following facts are taken from the Amended Complaint and are assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

      Plaintiff is a New York State prisoner currently incarcerated at the Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York. (Am. Compl. II(A)). On or about November 24, 2011, Plaintiff informed Defendant Emily Torres, a corrections officer at Sing Sing, that the sink in his prison cell was damaged. (Am. Compl. Statement of Claim (A)). Torrres took no steps to

repair the broken sink, and Plaintiff was not moved out of his cell. (*Id.*). The following day, Plaintiff cut himself on the sink. (*Id.*). Plaintiff told Torres about his injury, but once again Torres did nothing to address the problem (Am. Compl. II(D)).

On December 8, 2011, the sink collapsed, injuring Plaintiff's right arm and left index finger. (Am. Compl. II(D); *id.* Ex. A ("Dec. 9, 2011 Report")). Plaintiff was immediately taken to an emergency room, where he received three stitches in his arm and eight stitches in his finger. (Dec. 9, 2011 Report; Am. Compl. II(D)). After his injuries were treated, Plaintiff was sent to Sing Sing's Special Housing Unit ("SHU") for five days. (Am. Compl. II(D)). After investigating the incident, Defendant Panzarella, a correction officer at Sing Sing, filed a Misbehavior Report in which she falsely stated that Plaintiff intentionally broke the sink. (*See* Dec. 9, 2011 Report (explaining that Plaintiff's "injuries were not consistent with the facts obtained and [his] verbal account of [the] event"); Am. Compl. Statement of Claim (D) (describing the misbehavior report as "fraudulent")). The sink was repaired "immediately" after the incident. (Am. Compl. Statement of Claim (C)). As of January 23, 2013, Plaintiff's finger was still "35% not operable." (Am. Compl. III).

Plaintiff commenced this action on August 22, 2012. (Docket No. 2). After Defendants filed a motion to dismiss (Docket No. 17), Plaintiff filed an Amended Complaint (Docket No. 23). Defendants now move to dismiss the Amended Complaint. (Docket No. 24).

## LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Plaintiff here is proceeding *pro se*. Therefore, his submission should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court is "obligated to construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and "'dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34 [4][a] at 12-72.7 (2005) (alteration omitted)). Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Id.* (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61 (internal quotation marks omitted)); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

**DISCUSSION**

In his Amended Complaint, Plaintiff alleges that Defendants Torres, O'Cana, Heath, Keyser, and Harvey violated his constitutional rights by failing to fix the broken sink in his prison cell, thereby showing deliberate indifference to his health and safety. (Am. Compl. Statement of Claim (A), (B), (E)). Plaintiff further alleges that his rights were violated when Defendants Panzarella and Malloy filed the "fraudulent" Misbehavior Report and when Defendants confined him in the SHU for five days. He seeks monetary damages for the injuries to his hand and arm, as well as compensation for his "mental pain and suffering." (Am. Compl. V).[1]

**A. The Broken Sink**

Plaintiff alleges first that Defendants violated his constitutional rights by failing to timely replace the broken sink in his prison cell. The Eighth Amendment imposes on prison officials the duty to provide prisoners with "humane conditions of confinement" and to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The test for an Eighth Amendment claim is twofold. First, a prisoner must show that the condition to which he was exposed was sufficiently serious, *see id.* at 834, amounting to "a condition of urgency . . . that may produce death, degeneration, or extreme pain," *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)

---

[1] Plaintiff does not specify whether he is suing Defendants in their official or individual capacities. Because he is seeking only monetary damages, however, any claims against Defendants in their official capacities are barred by the Eleventh Amendment. *See, e.g.*, *Davis v.New York*, 316 F.3d 93, 101-02 (2d Cir. 2002) (explaining that Section 1983 claims seeking monetary damages against state officials in their official capacities must be dismissed under the Eleventh Amendment); *Bennett v. Wesley*, No. 11 Civ. 8715 (JMF), 2013 WL 1798001, at *4 (S.D.N.Y. Apr. 29, 2013) (same); *see also Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other.").

(internal quotations omitted).  Second, a plaintiff must show that the defendant acted with a "sufficiently culpable state of mind" — specifically, with "deliberate indifference to inmate health or safety."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

Here, Defendants' alleged failure to replace the broken sink is not "sufficiently serious" to constitute an Eighth Amendment violation.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (explaining that "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (citation and internal quotation marks omitted)); *see also Carr v. Canty*, No. 10 Civ. 3829 (JPO), 2012 WL 3578742, at *2 (S.D.N.Y. Aug. 16, 2012) ("Plaintiffs' allegation that a floor at Rikers Island was flooded by a broken pipe does not satisfy the first prong of stating a conditions-of-confinement claim."); *Adams v. Perez*, No. 08 Civ. 4834 (BSJ) (MHD), 2009 WL 513036, at *3 (S.D.N.Y. Feb. 27, 2009) (holding that defendants' failure to equip prison showers with rubber mats, even after plaintiff had filed a grievance, was not "sufficiently serious").  Furthermore, Plaintiff has not sufficiently alleged that any Defendant acted with a culpable state of mind, as it cannot plausibly be alleged that Defendants knew that the broken sink posed a "substantial risk of serious harm" and failed to "take reasonable measures to abate it."  *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Farmer*, 511 U.S. at 847); *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (explaining that the Eighth Amendment is not a "substitute for state tort law").  At most, Plaintiff has alleged that Defendants were negligent in failing to fix or replace the sink, but negligence is not actionable under Section 1983.  *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (per curiam) ("[D]eliberate indifference requires 'more than mere negligence.'" (quoting *Farmer*, 511 U.S. at 835)); *Jones v. Connolly*, No. 09 Civ. 3287 (SAS), 2010 WL 546730, at *1 (S.D.N.Y. Feb. 16, 2010) (holding that defendants' failure to repair a

broken step in a prison facility was "classic negligence . . . and as such cannot trigger the protections of the Constitution"). Accordingly, Plaintiff has not stated a claim under Section 1983 for Defendants' failure to fix the sink in his cell.

**B. The Misbehavior Report**

Next, Plaintiff alleges that Defendants Panzarella and Malloy filed a "fraudulent misbehavior report, in which . . . [they] alleged that the broken sink was of the Plaintiff's own wrong doing." (Am. Compl. Statement of Claim (D)). It is well established, however, that the filing of a false report regarding a prisoner, absent an allegation that it was in retaliation for the prisoner's exercise of his or her constitutional rights, is not actionable under Section 1983. *See, e.g.*, *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."); *Johnson v. Barney*, No. 04 Civ. 10204 (LBS), 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006) ("Merely filing a falsified investigative report in a grievance proceeding does not rise to the level of a constitutional violation; plaintiff's complaint fails to state a claim."), *aff'd*, 360 F. App'x 199 (2d Cir. 2010). Here, the Misbehavior Report was filed the day after the sink collapsed, weeks before Plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") and months before he sent a letter to the DOCS Commissioner about the IGRC's response. (*See* Dec. 9, 2011 Report; IGRC Grievance; Mem. in Opp'n Ex. A). As these are the only even arguably protected activities described in the Amended Complaint, Plaintiff has not plausibly alleged that the "fraudulent misbehavior report" was in retaliation for the exercise of his rights, and this claim also fails.[2]

---

[2]   Similarly, Plaintiff cannot state a retaliation claim based on his confinement in the SHU, as this incident also occurred immediately after the sink collapsed and weeks before he filed his IGRC grievance and wrote to the DOCS Commissioner. *See Espinal v. Goord*, 558 F.3d 119,

6

C. **Confinement in the SHU**

Finally, Plaintiff alleges that he was sent to the SHU for five days following treatment for the injuries to his arm and hand. (Am. Compl. II(D); *id.* at 8; Mem. in Opp'n 2). This allegation is evaluated as a due process claim under the Fourteenth Amendment. *See Zappulla v. Fischer*, No. 11 Civ. 6733 (JMF), 2013 WL 1387033, at *6 (S.D.N.Y. Apr. 5, 2013). In evaluating a due process claim, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (brackets and internal quotation marks omitted). A prisoner subject to discipline, such as confinement in the SHU, can show such a liberty interest "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). In determining whether segregated confinement is an "atypical and significant hardship," courts must consider factors such as "'the extent to which the conditions of the . . . segregation differ from other routine prison conditions' and 'the duration of the . . . segregation imposed compared to discretionary confinement.'" *Davis*, 576 F.3d at 133 (quoting *Palmer*, 364 F.3d at 64).

Although the Second Circuit has explicitly declined to create a "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," it has established "guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed." *Palmer*, 364 F.3d at 64. To the extent relevant here, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due

---

128 (2d Cir. 2009) (explaining that to state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a *causal connection between the protected speech and the adverse action*" (emphasis added) (internal quotation marks omitted)).

7

process protection, and thus require proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133; *see Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (stating that where a plaintiff endures onerous conditions for only a "brief interval," they must be "especially harsh" to be "atypical"). At the same time, the Court has cautioned that "SHU confinements of fewer than 101 days 'could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.'" *Davis*, 576 F.3d at 133 (quoting *Palmer*, 364 F.3d at 65).

Applying these standards here, Plaintiff's claim fails as a matter of law, as he has not alleged anything close to the kind of "especially harsh" conditions that could constitute an atypical and significant hardship for only five days in segregated confinement. *Sealey*, 197 F.3d at 586; *see, e.g.*, *Hynes v. Squillace*, 143 F.3d 653, 658-59 (2d Cir. 1998) (per curiam) (holding that twenty-one days of keeplock confinement did not give rise to a due process claim); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998) (same with respect to eighteen days in the SHU, including exercise deprivation and verbal harassment); *Brown v. Graham*, 470 F. App'x 11, 13-14 (2d Cir. 2012) (summary order) (same with respect to two five-day periods of "isolation in the infirmary" and ten days of keeplock confinement); *Zappulla*, 2013 WL 1387033, at *6-7 (same with repect to a five-day period). Indeed, he does not allege anything about the conditions in the SHU, but merely complains about being confined there. Accordingly, this claim also fails.

**CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss is GRANTED.[3] The Clerk of the Court is directed to terminate the motion (Docket No. 24), to close the case, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: August 27, 2012
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[3] Because Plaintiff has failed to state a claim that Defendants violated his constitutional rights, the Court need not, and does not, address Defendants' arguments regarding exhaustion of administrative remedies, qualified immunity, and the personal involvement of Defendants Health, Keyser, O'Cana, Malloy, and Panzarella. *See Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("When the facts, viewed in light most favorable to the plaintiff, do not demonstrate that an officer's conduct violated a constitutional right, the court need not further pursue the qualified immunity inquiry . . . ."); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."); *Alsaifullah v. Furco*, No. 12 Civ. 2907 (ER), 2013 WL 3972514, at *19 n.9 (S.D.N.Y. Aug. 2, 2013) (declining to address defendants' arguments regarding personal involvement, supervisory liability, and qualified immunity because plaintiff failed to state a claim for a deprivation of a federal right); *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003) (explaining that a court "may consider unexhausted claims on the merits . . . to dismiss them . . . for failure to state a claim").